Receipt number AUSFCC-6961465

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 1. | Corinthia J. Alexander | |
| 2. | Deidre L. Alexander | |
| 3. | DeVeren L. Alexander | |
| 4. | Samuel A. Alfred | |
| 5. | Chaundra D. Allen | |
| 6. | Richard W. Allen | Case No. _____ 21-1143 C |
| 7. | Duane Anthony | (Judge _____ ) |
| 8. | Angelo C. Argumon | |
| 9. | Anita Armstrong | |
| 10. | David A. Arredondo | COMPLAINT |
| 11. | Sidney C. August | |
| 12. | Antonio R. Austin | |
| 13. | Sarah Balsano | |
| 14. | John Bangart | |
| 15. | James P. Barker | |
| 16. | Lamesha Barnes | |
| 17. | Ricky E. Barnes | |
| 18. | Christopher Barrow | |
| 19. | Stephanie G. Battles | |
| 20. | Latisha F. Bellard | |
| 21. | Robert P. Bellard | |
| 22. | Adekoya I. Bello | |
| 23. | Bridget Benjamin | |
| 24. | Corey Berg | |
| 25. | David Bergeon | |
| 26. | Daniel Berlanga | |
| 27. | LaToya R. Berry | |
| 28. | William C. Bertrand | |
| 29. | Crystal L. Bevil | |

30. Marcus D. Bevil

31. Allen R. Biagas

32. Joel H. Bijeaux

33. Ronald S. Bishop

34. Jere Bolden

35. Tiffiney L. Booker

36. Eric Boone

37. Tiffany Botley

38. Danyelle J. Broussard

39. Cory E. Brown

40. Glenn R. Brown

41. Rachael Cagle

42. Travis L. Caldwell

43. Terry N. Cammack

44. Rosa M. Captain

45. Bradley Q. Carey

46. Chad E. Carlson

47. Lydia L. Carrington

48. Kandice Carter

49. Carmen Castillo

50. Michael A. Cato

51. Eduardo G. Cervantez

52. Frank D. Chatham

53. Mesha K. Chatman

54. Michael Chavis

55. Treveon Cheatham

56. Eric S. Chiles

57. Raymond Chopane

58. Joseph H. Chretien

59. Antwanette G. Clark

60. Michael Clear

61. Erick Clinkscales

62. Cody C. Coleman

63. John Coleman

64. Michael Coley

65. Anglela Collins

66. Traman D. Conway

67. Frank W. Coppock

68. Jordan A. Corcoran

69. Alonzo E. Cottrell

70. Kenneth V. Coursey

71. Raven M. Crawford

72. Mable M. Credit

73. Ezekiel D. Cross

74. Nicole Cruz

75. Brandy Dailey

76. Niketi A. Dale

77. Krisstopher David

78. Zamir Davila

79. David C. Davis

80. William T. Davis

81. Vincent Delgado

82. Bradley N. Denman

83. Adam D. Denn

84. Darrell Desormeaux

85. LaDonna E. Deveraux

86. Larry D. Deveraux

87. Carnivorus L. Dews

88. Melvin Dews

89. Kevin L. Dickerson

90. Travis M. Dies

91. Russell Dodson

92.  Jalan Dotson

93.  Erica M. Drew

94.  Keith D. DuBose

95.  Charles Duhon

96.  Marciea L. Duhon

97.  Sharon T. Duhon

98.  Craig Edwards

99.  Murphy Edwards

100.  Savannah S. Ehtridge

101.  Ogunsina Elisha

102.  Laura Emerson

103.  Robert Feather

104.  Canetha S. Fielder

105.  Vanessa R. Fogleman

106.  Trenton W. Fontenot

107.  William C. Forse

108.  Jarron C. Foster

109.  Mark H. Fry

110.  Brandon L. Fuqua

111.  DeAndrea C. Fuselier

112.  Yashicka V. Gary

113.  Richard Garza

114.  Amanda Gaus

115.  Renita Gay

116.  Jeffery T. Gilchirest

117.  Aaron C. Girouard

118.  Adrian Gonzalez

119.  Quantis Graves

120.  John Greenwood

121.  Elissa J. Grimmet

122.  Charles T. Grogan

123. Tiffany Grogan

124. Ruben Gutierrez

125. Cantrica D. Hall

126. Joshua R. Hallam

127. Chris E. Hampton

128. Robyn S. Hancock

129. Venezia L. Hancock

130. James Handley

131. Richard Harris

132. Chris Hasley

133. Leititia Hatch

134. Roshunda Hawkins

135. Robert Heath

136. Christopher L. Hebert

137. Timothy Heidecker

138. Elton B. Helaire

139. Iola A. Henderson

140. Harry Henry

141. John C. Herbrich

142. Karen Herbrich

143. Randall L. Hickox

144. Darrel Hightower

145. Dennis A. Hill

146. Vernon Hill

147. Paul E. Hinch

148. Jason R. Hinkle

149. LaToya Holly

150. Michael A. Holm

151. Amber N. Hooper

152. Maurice Horton

153. Harlean M. Howard

154. Jason D. Huff

155. James O. Huffman

156. Ekelem U. Ike

157. Nmutaka  Iloba

158. Jacob C. Ingram

159. Shaquille K. Irvin

160. Jessica L. Ivey

161. Curtis J. Jack

162. Dominique N. Jack

163. Candace J. Jackson

164. Darnell A. Jackson

165. Eric M. Jackson

166. Killand B. Jackson

167. Nathaniel L. Jackson

168. Charlotte Jacobs

169. Chris L. Jefferson

170. Amanda F. Johnson

171. Brian L. Johnson

172. Darrion J. Johnson

173. Derrick L. Johnson

174. Devin Johnson

175. Miranda J. Johnson

176. Ricardo S. Johnson

177. Charles A. Jones

178. Christina M. Jones

179. Felicia M. Jones

180. Leonard Jones

181. Ronald Jones

182. Solomon Jones

183. Wanda Jones

184. Cederick E. Joseph

185. David S. Kapparis

186. Eliud N. Karua

187. JC Kelley

188. Muhammad S. Khan

189. Milton Killen

190. Monet D. Kimble

191. Bradley B. Koslan

192. Michael Kringle

193. Bryan G. LaCour

194. Donna LaGrone

195. Jeffrey A. LaGrone

196. Emmitt D. Landry

197. Mark Landry

198. Jason Lange

199. Carrie Laprocina

200. La Toya Larry

201. Brandon J. LaValley

202. Sparkle Lee

203. Amy S. Leleux

204. William D. Leon

205. Russell E. Levy

206. Indria N. Lewis

207. Terrance R. Lewis

208. Brent Lindsey

209. Jeffery T. Lovall

210. Larry Loville

211. Toby J. Lynam

212. Michael W. Mackenroth

213. Kieasha M. Marshall

214. Michael R. Mattes

215. Jesselyn L. May

216. Jasmin Mayfield
217. Floyd A. McClenon
218. Meocia M. McDowell
219. Robert E. McGarvey
220. Justin D. McGowen
221. Santanna M. Melbert
222. Jonathan Mergeson
223. Elizabeth Miller
224. Justice D. Miller
225. Markette D. Miller
226. Ricki Miller
227. Earl Minard
228. Gregory Minnard
229. Andrew J. Montgomery
230. Joy M. Mount
231. Charla L. Mulhollan
232. Robbi Murphy
233. Brittany Narcisse
234. Martell J. Nobles
235. Natasha Nobles
236. Joshua A. Orin
237. Matthew C. Osburn
238. Michael J. Parks
239. Elvis E. Payne
240. Steven Penry
241. Bryan K. Perkins
242. Herman Perry
243. Brian Pierre
244. Billy G. Piske
245. Edward Pitre
246. Ebonee Platt

247.   Chasity Price
248.   Tikisha L. Provost
249.   Steven Ray
250.   Charnika S. Reynolds
251.   James T. Rhoades
252.   Courtney N. Richard
253.   James Richard
254.   Jarmal T. Richardson
255.   Jacobee J. Robertson
256.   Keelem L. Robinson
257.   Darrell Rogers
258.   John W. Root
259.   Reginald Rose
260.   Ricki J. Rowell
261.   Mia C. Rutherford
262.   Dan Rutunda
263.   Pennie R. Sam
264.   Luis F. Sanchez
265.   Robert W. Sanders
266.   Deonte G. Sawyer
267.   Darlene Scruggs
268.   Roberto Serna
269.   Dedrick D. Shavers
270.   Lesean B. Shaw
271.   Candra D. Sims
272.   George E. Smith
273.   Justin C. Smith
274.   Sarah E. Smith
275.   Adrian Soto
276.   Luis A. Soto
277.   Gwendolyn M. Sowell

278. James D. Sowell

279. Steven Sowell

280. Amanda S. Stanton

281. Travis L. Stanton

282. Aubrey V. Steele

283. Ebony T. Stephenson

284. Brandon Strong

285. Kenneth Strong

286. Parker R. Strong

287. Willie Strong

288. Mark L. Sunday

289. William Switoyus

290. Dwight D. Talton

291. Vontrella D. Tate

292. LeAnna J. Taylor

293. Earl J. Tebo

294. Travis W. Thierry

295. Delisha M. Thomas

296. Robert E. Thomas

297. Tyree J. Thomas

298. Andrew M. Tomas

299. Perry Turpin

300. Franciso A. Valdez

301. Christopher A. Vela

302. Edmond U. Victor

303. DiMario  Walk

304. Cosmus L. Walker

305. Sharecka N. Walker

306. Michael J. Walston

307. Francis Warren

308. Shaye Washington

309. Alfred D. Watts

310. Terry B. Watts

311. Jason W. Weiblinger

312. Antoine O. Wells

313. Lee West

314. Rita West

315. Ralph D. Whilhite

316. Pamela White

317. La'Loni C. White Winters

318. Aaron A. Wickliff

319. Benard Williams

320. Danysha J. Williams

321. James A. Williams

322. Jimmy Williams

323. Kerry Williams

324. Mary C. Williams

325. Peter A. Wolfe

326. Ashley Woods

327. Dextel D. Word

328. Stephen Wycoff

329. Felipe Young

330. Jacob R. Young

       Plaintiffs,

  v.

THE UNITED STATES,

       Defendant.

## COMPLAINT

1.      The plaintiffs are current and former employees of the Defendant United States at the U.S. Department of Justice, Bureau of Prisons, at the Federal Correctional Complex ("FCC") Beaumont (hereinafter, "Institution") in Beaumont, Texas. Plaintiffs bring this action against the Defendant on behalf of themselves and other employees similarly situated for back pay, and other relief, pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1331, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, 5 U.S.C. § 5596, and the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the willful and unlawful violations of federal law complained of herein.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1331, 28 U.S.C. § 1491, and 29 U.S.C. § 216(b). Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

3.      Each of the Plaintiffs in this action is, or has been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5041, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

4.      Each of the Plaintiffs is a current or former correctional worker employed by the United States Department of Justice, Bureau of Prisons, at FCC Beaumont in Beaumont, Texas. They have given their written consent to be party Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The consent to sue forms are attached as **Exhibit A**. These written consent forms set forth each Plaintiff's name and home address.

5.      Defendant United States is, and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. Defendant United States also is,

and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, the Plaintiffs and other employees in similar activities and has its principal place of business in Washington, D.C.

## FACTS

6.     At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

7.     At all times material herein, Plaintiffs have worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207, and, as a result, at all times material herein have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for all the hours or work in excess or 8 hours in a work day and/or in excess of 40 in a workweek.

8.     FCC Beaumont is a federal correctional complex consisting of three facilities that are at issue in this lawsuit: FCI Beaumont Low, a low security correctional facility; FCI Beaumont Medium, a medium security correctional facility; and USP Beaumont, a high security penitentiary.

9.     The Institution houses thousands of male inmates who have been convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members. Specifically, FCI Beaumont Low houses over 1,700 inmates, FCI Beaumont Medium houses over 1,400 inmates, and USP Beaumont houses over 1,200 inmates.

10.     The Institution—including FCI Beaumont Low, FCI Beaumont Medium, and USP Beaumont—is staffed 24 hours per day, 365 days per year by correctional officers, including Plaintiffs. The correctional officers' principal activity is maintaining the safety and security of the Institution, inmates, and staff. The correctional officers are charged with performing this principal activity every moment that they are within the Institution, from the moment they begin the

mandatory staff security screening prior to their shifts until they exit the secured confines of the Institution after their shifts end. Plaintiffs perform their principal activity by, among other things, ensuring that no contraband is being introduced into the Institution, maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, immediately addressing any issues that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after they end.

11.      Plaintiffs are assigned to posts within the Institution. Most of the posts are staffed for 16 or 24 hours per day, although some are staffed for only 8 hours per day.

12.      When a post is staffed for 24 hours per day, the Defendant assigns a correctional officer to that post for a scheduled paid shift of 8 hours.[1] For a 24-hour post, there are three 8-hour paid shifts daily, often referred to as Morning Watch, Day Watch and Evening Watch. There is no overlap of these 8-hour shifts on 24-hour posts.

13.      For the 24-hour posts, Plaintiffs perform more than 10 minutes of overtime work each day beyond their scheduled, paid shift because Plaintiffs perform work both before their scheduled paid start time and/or after the end of their scheduled paid shifts.

14.      Defendant does not compensate Plaintiffs for the time that Plaintiffs spend performing daily work outside of their regularly scheduled shifts. At all times material herein, Defendant has suffered or permitted Plaintiffs to work at least 15-30 minutes each shift, and sometimes more, before and after their scheduled shift times without compensating Plaintiffs for this work time.

15.      This overtime work is administratively feasible to record. Indeed, had Defendant

---

[1] Because the Institution has implemented a Compressed Work Schedule option, some 24-hour Housing Unit posts are staffed with two shifts of 12 hours, instead of three shifts of 8 hours. There is no overlap on the 12-hour shifts on 24-hour Housing Unit posts.

implemented time clocks where Plaintiffs perform their first principal activity (i.e., at the screening site location) and where Plaintiffs perform their last principal activity (i.e., where Plaintiffs exit the secure perimeter of the Institution), the unpaid work at issue in this case would have been recorded.

16.     The 15-30 minutes of unpaid overtime work at issue in this lawsuit is substantial in the aggregate.

17.     The 15-30 minutes of unpaid overtime work at issue in this lawsuit is regular and recurring as Plaintiffs perform this unpaid work each shift they are assigned to a covered 24-hour post.

18.     24-hour posts worked by Plaintiffs at FCI Beaumont Low at issue in this lawsuit are: Control 1, Compound 1, SHU 1, SHU 2, and A-sides of Housing Units S, T, U, V, W, and X.

19.     24-hour posts worked by Plaintiffs at FCI Beaumont Medium at issue in this lawsuit are: Control 1, Compound 1, SHU 1, SHU 2, and A-sides of Housing Units K, L, M, N, and P.

20.     24-hour posts worked by Plaintiffs at USP Beaumont at issue in this lawsuit are: Control 1, Compound 1, Main Corridor, SHU 1, SHU 2, and the #1 and #2 posts in Housing Units AA, AB, BA, BB, CA, CB, DA, DB, EA, EB, FA, and FB.

21.     There is no scheduled, paid overlap for any of the shifts on the 24-hour posts. For 8-hour paid shifts, the Day Watch shift is from 8:00 a.m. to 4:00 p.m.; Evening Watch is from 4:00 p.m. to midnight; and Morning Watch is from midnight to 8:00 a.m. There is no scheduled, paid overlap for the 12-hour paid shifts either. Plaintiffs are required to be on their assigned posts, in uniform and with all assigned equipment and pertinent post information, by the scheduled start of their paid shift. Failure to meet this requirement subjects the Plaintiffs to discipline. Plaintiffs must remain on their posts until they are properly relieved. Failure to meet this requirement subjects

Plaintiffs to discipline.

22.    Defendant has deprived Plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that Defendant has suffered or permitted them to spend engaged in pre-shift work activities, including but not limited to the work activities described in paragraphs 23-37 below, all of which must be performed on Institution premises.

23.    On a daily basis, Plaintiffs assigned to a 24-hour post at any of the three facilities within Institution begin their unpaid pre-shift work when they start the process of clearing the staff screening site in the front lobby of FCI Beaumont Low, FCI Beaumont Medium, or USP Beaumont, depending on their post assignment. At this location, Plaintiffs perform their principal activity of maintaining safety and security by assuring that no contraband enters the Institution. Keeping contraband out of the prisons is a principal activity performed by Plaintiffs.

24.    At minimum, clearing the security screening site is integral and indispensable to Plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution, because it is intrinsic to that principal activity and one with which they cannot dispense if they are to safely perform their job duties as correctional officers in the dangerous prison environment.

25.    The compensable (but unpaid) workday continues when Plaintiffs collect and don their duty belts, protective vests, and other required equipment after clearing the staff screening site, including required metal chains and chits, which are essential to hold keys and access equipment. Retrieving and donning the duty belt and metal chains and chits must be performed on Defendant's premises after clearing the screening site because Plaintiffs cannot wear their duty belts, protective vests, and metal chains as they walk through the upright metal detector without sounding the alarm. Collecting and donning equipment on the employer's premises is compensable

work but unpaid at the Institution.

26.     At minimum, collecting and donning security and accountability equipment on the Institution's premises is integral and indispensable to Plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because these activities are intrinsic to that principal activity, and ones with which they cannot dispense if they are to safely perform their job duties as correctional officers in the dangerous prison environment.

27.     Regardless of the 24-hour post they are assigned to inside any of the three facilities within the Institution, after Plaintiffs clear the staff screening site and collect and don their duty belt and other equipment, Plaintiffs continue to perform pre-shift work activities as part of the continuous workday for which they are not paid. For all posts at issue, Plaintiffs perform their principal activity of maintaining safety and security on the way to their assigned posts inside the secure confines of the Institution because they, at all times, are in uniform and identifiable to the inmates and staff as correctional officers, and remain vigilant, alert, and ready to respond to emergencies. They perform these pre-shift tasks without pay.

28.     After donning their duty belts, protective vests, and collecting and donning other equipment, Plaintiffs at FCC Beaumont will be visually identified by the Control Center officer in whichever facility they are assigned who will allow them entrance into a sally port, where they are required to flip their accountability chit signifying that they are on duty and inside the secured confines of the Institution. After clearing the sally port, Plaintiffs walk down an outdoor walkway in each facility called a breezeway which terminates in a locked slider gate leading onto the compound at FCI Beaumont Low and FCI Beaumont Medium, and a second sally port leading onto the main corridor at USP Beaumont. In addition, at USP Beaumont, depending on their assigned post, Plaintiffs may need to clear through a locked gate in the middle of the compound,

which splits the USP compound in two and is controlled by the Compound or Main Corridor officer. Once Plaintiffs clear the slider at FCI Beaumont Low or FCI Beaumont Medium, or the sallyport at USP Beaumont, Plaintiffs are locked inside the Institution with the inmates with no control over the sally port and/or slider doors.

29.     Plaintiffs at FCC Beaumont continue to perform unpaid security work after clearing the slider or sallyport and while walking to their 24-hour posts inside the secure confines of the Institution. While walking to their posts, Plaintiffs observe and correct inmate behavior, respond to inmate questions, check for security breaches in the perimeter fence and elsewhere inside the Institution, check for contraband, run to locations where body alarms sound, and respond to other emergencies as they arise. At all times Plaintiffs are within the secure confines of the Institution, including while walking to their posts, Plaintiffs are subject to the rules and regulations of the Institution and the U.S. Bureau of Prisons and are in uniform and identifiable to all inmates as correctional officers.

30.     At minimum, these patrol and security activities performed by Plaintiffs as they walk to their posts are activities that are integral and indispensable to Plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because they are intrinsic to that principal activity, and ones with which they cannot dispense if they are to safely perform their jobs as correctional officers in the dangerous prison environment.

31.     Once Plaintiffs arrive at their posts inside the Institution, they continue to perform unpaid safety and security work as they inspect, account for, and exchange equipment—including but not limited to radios, oleoresin capsicum ("OC") spray and keys—with the outgoing correctional officer assigned to that post. Plaintiffs also perform a vital (but unpaid) information exchange with the outgoing correctional officer about any significant security events that occurred

the previous shift so that the oncoming correctional officer has all the important information they need to maintain security of the inmates, staff, and post during their shift.

32. At minimum, performing this vital information and equipment exchange on the assigned post is integral and indispensable to Plaintiffs' principal activities of maintaining safety and security of staff, inmates, and the Institution because the exchange is intrinsic to that principal activity, and one with which they cannot dispense if they are to safely perform their jobs as correctional officers in the dangerous prison environment.

33. While two officers engage in this critical information and equipment exchange with each other on each post (i.e., the oncoming and outgoing officer), only one officer is paid for this work time because there is no scheduled paid overlap to the shifts even though there is, in fact, an overlap to the shifts.

34. Defendant is aware that there is a *de facto* overlap of Plaintiffs' shifts and knows how to overlap shifts. For example, there has been a 15-minute scheduled, paid overlap between the two 8 hour shifts on 16-hour posts in the Institution since at least 2014.

35. Defendant has also deprived Plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that Defendant has suffered or permitted them to engage in post-shift activities, all of which must be performed on Institution premises. These activities include, but are not limited to, exchanging information and equipment on the assigned post with oncoming staff, remaining vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies. These activities are all part of the continuous workday and are compensable, but they are unpaid at the Institution.

36.     At minimum, these on-post equipment and information exchanges and the patrol and security activities performed by Plaintiffs as they walk back to the Control Center after their shifts are activities that are integral and indispensable to Plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because they are intrinsic to that principal activity, and ones with which they cannot dispense if they are to safely perform their job duties as correctional officers in the dangerous prison environment.

37.     Plaintiffs are required to, and do, respond to emergencies, including violent fights between inmates, within the Institution on unpaid time when such emergencies occur while they are walking to their posts prior to their shifts, or while they are walking from their posts back to the Control Center after their shifts. Failure to respond to an emergency results in discipline up to and including termination.

38.     While the 24-hour correctional officer posts are primarily staffed with correctional officers, due to staff shortages, non-custody correctional workers are often "augmented" to cover correctional officer posts or are assigned to work correctional officer posts during scheduled overtime shifts. Non-custody positions include but are not limited to workers assigned to food services, recreation and education staff, and correctional services staff.

39.     When non-custody workers are augmented and assigned to a correctional officer post, the non-custody worker performs the same unpaid work duties as a correctional officer and arrives and departs at the same time that a correctional officer working the same shift on the same post would. Thus, Plaintiffs who are non-custody workers have been suffered or permitted to perform the same unpaid work daily, as described above, to maintain the safety and security of the Institution. However, similar to the custody worker Plaintiffs, Defendant only compensated non-custody worker Plaintiffs for their scheduled hours of work and did not compensate them for their

pre-shift or post-shift work when they worked on a correctional officer post.

## COUNT I

### FAILURE TO PROPERLY COMPENSATE EMPLOYEES FOR
### THE ENTIRE CONTINUOUS WORKDAY

40.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 39 in their entirety.

41.    Section 7(a) of the FLSA (29 U.S.C. § 207(a)) provides that an employer shall compensate its employees at a rate not less than one and one-half times their regular rate for each hour employed in excess of 40 hours per week.  In addition, section 551.501 of Part 5 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek. At all or some of the times material herein, Plaintiffs and other employees similarly situated have been entitled to FLSA overtime pay for all hours of work in excess of eight (8) in a day and/or forty (40) in a workweek.

42.    For federal employees such as Plaintiffs, time spent in a paid, nonwork status, such as holiday, paid leave, compensatory time off, and excused absences, is considered "hours of work" for purposes of calculating overtime entitlement.  5 C.F.R. § 551.401(c).

43.    At all or some of the times material herein, and since March 31, 2018, Plaintiffs have worked for Defendant at FCC Beaumont. At all times material herein, each of the Plaintiffs has worked hours in excess of forty (40) hours per week and/or eight (8) hours a day. In addition, at all times material herein, each of the Plaintiffs has performed uncompensated pre-shift and/or post-shift work.

44.    At all times material herein, Plaintiffs have been entitled to be compensated with overtime pay for time spent performing work prior to their paid shift start times. Defendant,

however, has failed to count as work the pre-shift tasks that Plaintiffs regularly perform outside of their paid shift times, including the time that Plaintiffs spend clearing the required staff screening sites, picking up and donning equipment, security work performed while traversing the compound of FCI Beaumont Low or FCI Beaumont Medium, or the main corridor of USP Beaumont, or while walking to their assigned post, and completing a shift exchange with an outgoing correctional officer.

45.     At all times material herein, Plaintiffs have been entitled to be compensated with overtime pay for time spent performing work after the end of their scheduled paid shifts. Defendant, however, has failed to count as work the post-shift tasks that Plaintiffs have performed outside of their paid shift times including the time that Plaintiffs spend completing a shift exchange with the oncoming correctional officer following their shift, and security and patrol work performed while crossing the compound or main corridor walking back to the Control Center.

46.     Because Defendant has failed to count as compensable work time the required pre-shift and post-shift tasks, Plaintiffs have not been compensated for all hours of overtime work as required by the FLSA.

47.     By failing and refusing to pay Plaintiffs and other employees similarly situated the overtime pay required under law, Defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA.  As a consequence, at all times material herein, Plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

48.     As a result of Defendant's willful and purposeful violations of the FLSA and Title 5, there have become due and owing to each of the Plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each Plaintiff are in the

exclusive possession, custody and control of Defendant and its public agencies and Plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, 29 U.S.C. §211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amounts of Defendant's liability can be ascertained.

49.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover backpay and liquidated damages in an amount equal to their backpay for Defendant's failure to pay overtime compensation in compliance with the FLSA.

50.     Pursuant to the Back Pay Act, 5 U.S.C. § 5596, Plaintiffs are entitled to recover interest on their backpay damages for Defendant's failure to pay them overtime compensation.

51.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all others similarly situated who are or become Plaintiffs in this lawsuit, pray that this Court:

(a) Enter judgment declaring that Defendant has willfully and wrongfully violated its statutory obligations, and deprived each Plaintiff of their rights under the FLSA and Title 5;

(b) Award each Plaintiff monetary damages, including backpay and liquidated damages equal to their unpaid compensation, plus interest;

(c) Award Plaintiffs their reasonable attorneys' fees to be paid by Defendant, and the costs and disbursements of this action; and

(d) Grant such other relief as may be just and proper.

Dated: March 31, 2021                    Respectfully submitted,

*/s/ Molly A. Elkin*
Molly A. Elkin
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C.  20005
Phone: (202) 833-8855
mae@mselaborlaw.com

*Counsel of Record for Plaintiffs*

Sarah M. Block
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
smb@mselaborlaw.com

*Of Counsel for Plaintiffs*